

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

April 25, 1958

Mr. A. C. Spencer,
Executive Director,
Texas State Soil Conservation Board,
1012 First National Bank Building,
Temple, Texas

Opinion No. WW-423.

Re: Is it legal for a Soil
Conservation District,
created under provisions
of House Bill 444, Acts,
47th Legislature, 1941,
Chapter 308, page 491, to
accept conditioned ease-
ments for flood prevention
structures, in which a
Soil Conservation District
assumes financial responsi-
bility for damage to utility
lines and other installations;
and related questions.

Dear Mr. Spencer:

We have received your request, dated March 31, in which you ask our opinion concerning a Soil Conservation District, created under provisions of House Bill 444, Acts, 47th Legislature, 1941, Chapter 308, page 491. You state the District is to furnish, without cost to the federal government, all easements and rights of way necessary for a proposed flood prevention structure. The American Tele- phone and Telegraph Company has offered the District an easement to impound water over their right of way contain- ing the Holdenville-Dallas "A" and "B" buried communication cables, conditioned, however, upon the District assuming financial responsibility for <u>any damage</u> to the cables, re- sulting from <u>construction or maintenance</u> of the structure, or occasioned by <u>its employees, contractors, land-owners or others</u>.

You have requested our opinion on four questions, substantially as follows:

1. Is it legal for a Soil Conservation District, created under provisions of House Bill No. 444, Acts, 47th Legislature, to accept conditioned easements for flood prevention structures in which the Soil Conservation District assumes financial responsibility for damage to utility lines and other installations?

2. If a Soil Conservation District should assume financial responsibility for damage to utility lines and in the construction process damage occurs, could funds appropriated for use of the Soil Conservation District by the Texas Legislature be used to pay such damages?

3. Could funds earned from the use of State appropriated funds be used to pay such damages?

4. What personal financial liability for damages to utility lines could be attached to individual Soil Conservation District Supervisors, if such a conditioned easement is accepted?

A Soil Conservation District is a governmental subdivision of this State, and a public body corporate and politic, which exercises public powers in accordance with, and for the purposes set forth in the State Soil Conservation Law. House Bill 444, Acts, 47th Legislature, Sections 1, 3 and 7. Such Districts have the expressed power:

"(Sec. 7-(3)) To obtain options upon and to acquire, by purchase, exchange, lease, gift, grant, bequest, devise or otherwise, any property, real or personal, or rights or interests therein; to maintain, administer, and improve any properties acquired, . . .

"(Sec. 7-(5)) To construct, improve, and maintain such structures as may be necessary or convenient for the performance of any of the operations authorized in this Act;

"(Sec. 7-(7)) . . . to manage, as agent of the United States or any of its agencies, or of this State or any of its agencies, any soil conservation, erosion control, or erosion prevention project within its boundaries; . . ."

The "conditioned easement" you mentioned is, in reality, an easement which would give the District a right to flow and impound water over the Company's right of way; coupled with the District's covenant to indemnify the Company for all possible damage to the Company's property. The statute (Section 3) empowers the District to acquire, by means specified, ". . . any property, real or personal, or rights or interests therein; . . .". Clearly, the District is authorized to secure easements, but a question presents itself as to whether the District may make covenants of the nature in question.

A soil conservation district, like other districts created under Section 59a of Article XVI of the Constitution of Texas, and statutes enacted thereunder carrying out the purposes of such constitutional provisions, is the political subdivision of the State, performing governmental functions, and standing upon the same footing as counties and other political subdivisions established by law. Bennett v. Brown County Water Improvement District No. 1, 153 Tex. 599, 272 S.W. 2d 498, and authorities therein cited.

The proposed covenant, whereby the Soil Conservation District would obligate itself to indemnify the company for "any damage to the cables resulting from construction or maintenance of the structure, or occasioned by its (the District's) employees, contractors, land owners or others" would contravene the well established rule that such political subdivisions may not become an indemnitor.

To this effect, see Galveston H. & S.A.Ry. Co. v. Uvalde County, 167 S.W. 2d 305, (writ refused, want of merit), in which the following statements are made:

"We conclude there was no error in the Court's action in dismissing the cause, because the claimed contract was ultra vires and the county had no authority to enter into the alleged contract of indemnity. . . .

". . . It is a contract whereby the County of Uvalde agrees to indemnify the Railroad Companies against all loss they may sustain by reason of a dipping vat being placed in the shipping pens of the Railroad Companies, regardless of how such damage may arise and regardless of whose negligence may have caused the damage, and regardless of how great the loss may have been or may be in the future.

"The County of Uvalde unquestionably had authority under the statutes to enter into a contract with the Railroad Companies for the privilege of erecting a dipping vat within the stock pens owned by the Railroads, but such authority would not justify a contract to indemnify the Railroads against all loss which might thereafter arise as a result of such vat being so located, regardless of how such loss might arise or whose negligence might cause such loss. . . .

". . . It is argued that Uvalde County could not have secured permission from the Railroad Companies to construct such vat in their shipping pens if it had not entered into a contract of indemnity with the Railroads. This may be true, but, if so, the county should have simply located the vat at some other place. It could not use this fact as an excuse for pledging the credit of the county to cover an unlimited liability which might arise in the future and thereby subject the county to possible financial ruin."

In answer to your first question, it is our opinion, and you are so advised, that a Soil Conservation District may not assume financial responsibility for "any damage to the cables resulting from construction of the structure" as proposed.

This is not to say that, under certain circumstances, such a District could not incur liability to the Company for taking or damaging Company property under the provisions of Section 17 of Article I of the Constitution of Texas. The determinative question there would be controlled by a particular set of facts which may or may not exist at some time in the future, upon which this Department may not now pass.

In view of our answer to your question No. 1, we deem it unnecessary to answer questions Nos. 2, 3 and 4.

## SUMMARY

A Soil Conservation District, created under House Bill 444, Acts, 47th Legislature, 1941, is a political subdivision of the State, standing on the same footing as counties; it is authorized to secure easements, but may not assume

financial responsibility for all
damage to property which may result
from its activity, for such would
be a prohibited contract of
indemnity.

Yours very truly,

WILL WILSON
Attorney General of Texas

By  Tom I. McFarling
Tom I. McFarling
Assistant

TIM:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Riley Eugene Fletcher
Harris Toler

REVIEWED FOR THE ATTORNEY GENERAL

By: W. V. Geppert.